IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TYRONNE BATTLE,

        Plaintiff,                      No. CIV S-06-0171 LKK GGH P

    vs.

TERESA SCHWARTZ, et al.,

        Defendants.            <u>ORDER</u>

_____/

        Plaintiff is a state prisoner proceeding pro se. He seeks relief pursuant to 42 U.S.C. § 1983 and has requested authority pursuant to 28 U.S.C. § 1915 to proceed in forma pauperis. This proceeding was referred to this court by Local Rule 72-302 pursuant to 28 U.S.C. § 636(b)(1).

        Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). Accordingly, the request to proceed in forma pauperis will be granted.

        Plaintiff is required to pay the statutory filing fee of $250.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). Plaintiff has been without funds for six months and is currently without funds. Accordingly, the court will not assess an initial partial filing fee. 28 U.S.C. § 1915(b)(1). Plaintiff is obligated to make monthly payments of twenty percent of the preceding month's income credited to plaintiff's prison trust account. These payments shall be collected

and forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989); Franklin, 745 F.2d at 1227.

A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

Plaintiff names as defendants California Medical Facility - Vacaville (CMF-V) Warden Teresa Schwartz; Chief Deputy Medical Director Nadim Khoury; Ward Physician

1  Kenneth Low; Chief Medical Officer (CMO) Raymond Andreasen; "Consult" Dietician Patty
2  Pinkerton; Correctional Lieutenant M. Pulsipher; Senior Medical Technical Assistant (MTA) D.
3  Kearney; M. Cry; E. Mitchell. Complaint, pp. 3-4.

4        Plaintiff, a 30-year old paraplegic, alleges that defendants have variously
5  conspired and discriminated against plaintiff and 31 other people in his General Acute Care
6  Hospital (GACH) housing unit, G1, in violation of his due process and equal protection rights
7  under the Fifth and Fourteenth Amendments, as well as his rights under the Eighth Amendment.

8        Plaintiff alleges that inmates on the mainline and in hospice have been allowed to
9  purchase personal food from the canteen and from "special food sales" and also have access to a
10 microwave, but that only the inmates in his unit are restricted to doctor-prescribed special diets.
11 Id., at 3-4, 6-7.  Plaintiff alleges that hospice patients are allowed mailed food packages and even
12 get free food in the form of ice cream, sodas, and Kentucky Fried chicken even though they are
13 in-patients (as, impliedly are he and the inmates in his unit) and even though some of the hospice
14 patients also have doctor-prescribed diets.  Id., at 6-7.

15       On the one hand, plaintiff alleges that doctors have restricted his diet and that of
16 the other G1 patients, and on the other, he contends that doctors say they have nothing to do with
17 restricting the canteen access.  Id., at 3, 6.  Inmate patients are grown ups who can choose to eat
18 what a doctor can recommend but not restrict them to.  Id., at 6.

19       Defendant Pulsipher took the microwave only from plaintiff's unit and, when
20 confronted as to why, offered no explanation other than that plaintiff's unit should not have one.
21 Id., at 3-4.  Because they do not have a microwave, inmates in G1 can no longer prepare such
22 foods as soups, coffee, hot chocolate, chili, stew, macaroni and cheese, and oatmeal.  Id., at 7.
23 Defendant CMO Andreasen stated that inmates (in G1) could only eat what the facility gives
24 them.  Id., at 3.  Defendants Warden Schwartz and Chief Deputy Medical Director Khoury have
25 signed documents which discriminate against the hospital patients, documents which plaintiff
26 does not identify or describe.  Id.  Defendant Dr. Low told plaintiff that the administration stated

1  that plaintiff could eat only what he (Low) ordered for plaintiff.  Id.  Defendant Pinkerton is a
2  "consult dietician" who plaintiff believes "knows nothing about what she is doing as a dietician,"
3  but to whom the doctors tell plaintiff to speak about what plaintiff cannot eat.  Id.  Defendant
4  Pinkerton refused to give plaintiff the turkey and dressing other patients got for Thanksgiving,
5  even though non-defendant Dr. Dhillon told her give him the turkey meal, instead giving him
6  Top Ramen noodles.  Id.  She also entered unidentified false documentation into plaintiff's
7  medical records.  Id.  Defendants Pulsipher and Khoury conspired with respect to the removal of
8  the microwave in putting a memo out signed by defendant Khoury that inmates (apparently the
9  in-patient inmates) could not have a microwave any longer.  Id., at 4.  Defendants Kearney,
10 Schwartz, Khoury, and Cry all lied about some insufficiently described information with regard
11 to an unspecified administrative appeal filed by plaintiff.  Id.  Defendant Mitchell, whom plaintiff
12 does not know, denied plaintiff's appeal at one level which leads him to believe she is one of the
13 conspirators.  Id.  Plaintiff's appeal against defendant Pulsipher with regard to the removal of the
14 microwave went to the director's level but no reason was provided as to why the microwave was
15 taken after having been used by the inmate patients for many years.  Id., at 7.

16      When defendant Pinkerton and non-defendants Forshay and Enriquez changed
17 plaintiff's diet after non-defendant food manager Tom Jovero retired, plaintiff "started finding
18 more contraband in [his] food, once bugs in my salad, human hair in [his] steak, an eyelash in
19 another meal, and a roach came running from under [his] bread."  Id., at 7-8.  Plaintiff claims that
20 the condition of his food became so bad that he could not eat any more food that arrived "open."
21 Id., at 8.  On a recent night, he was looking forward to turkey and dressing but instead received
22 two juices, molded hard, white bread and a small pack of cookies; the next night, December 21,
23 2005, plaintiff received a tray that was tampered with, with half the chicken missing, to which
24 two staffmembers could attest.  Id., at 8-10.  Plaintiff has gotten to the point where he does not
25 intend to eat what he is served, but will try to keep from starving to death.  Id., at 9.  Plaintiff
26 briefly mentions the A.D.A. at one point and elsewhere makes a vague reference to certain

4

1  mainline programs, including Alcoholics Anonymous (AA), Narcotics Anonymous (NA) and
2  Lifers Anonymous (LA). Id., at 2, 6. Plaintiff also hints that the actions of defendants are
3  retaliatory but does not sufficiently set forth such allegations. Plaintiff seeks declaratory relief
4  and money damages.

5              As to his most colorable claim, that his food is being tampered with or
6  contaminated by certain parties, plaintiff may be able to set forth an Eighth Amendment
7  violation. "Prison officials have a duty to ensure that prisoners are provided adequate shelter,
8  food, clothing, sanitation, medical care, and personal safety." Johnson v. Lewis, 217 F.3d 726,
9  731 (9th Cir. 2000), citing, inter alia, Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970
10 (1994). When an inmate has been deprived of necessities, "the circumstances, nature and
11 duration of a deprivation...must be considered in determining whether a constitutional violation
12 has occurred. Johnson, supra, at 731. "'[A] lack of sanitation that is severe or prolonged can
13 constitute an infliction of pain within the meaning of the Eighth Amendment.'" Id., quoting
14 Anderson v. County of Kern, 45 F.3d 1310, 1314, as amended, 75 F.3d 448 (9th Cir. 1995).

15             In order to make a sufficient claim with respect to food contamination, however,
16 plaintiff must provide greater specificity with regard to when the events occurred; he has only
17 done so with respect to two such events. Moreover, he has failed to name as defendants two of
18 the individuals that he states are responsible for altering his diet. He does not even explicitly
19 state who he believes is tampering with his food or whether or not such contamination is random
20 and occasional only, which is too de minimis to rise to a constitutional deprivation to which he is
21 being subjected, or whether the contamination occurs routinely and with some consistency. This
22 claim will be dismissed but plaintiff will be granted leave to amend within thirty days.

23             With respect to any claim under the Americans with Disabilities Act, plaintiff
24 hints at but fails to articulate such a claim. He makes a vague reference to mainline programs
25 such as AA, NA, LA, but does not even state that he is being deprived of access to such
26 programs. Plaintiff may bring a claim pursuant to Title II of the ADA against state entities for

injunctive relief and damages. See <u>Phiffer v. Columbia River Correctional Institute</u>, 384 F.3d 791 (9th Cir. 2004); <u>Lovell v. Chandler</u>, 303 F.3d 1039 (9th Cir. 2002). Plaintiff may seek money damages against state entities under the ADA, but only insofar as defendants' activities violated the Fourteenth Amendment. <u>United States v. Georgia</u>, ___ U.S. ___, 126 S. Ct. 877, 881 (2006). However, he cannot seek damages pursuant to the ADA against the defendants in their individual capacities. <u>Eason v. Clark County School Dist.</u>, 303 F.3d 1137, 1144 (9th Cir. 2002), citing <u>Garcia v. S.U.N.Y. Health</u>, 280 F.3d 98, 107 (2d Cir. 2001). Accordingly, to the extent that plaintiff intends to make claims against the individual defendants under the ADA, they must be dismissed because plaintiff has not named a proper defendant, nor has plaintiff shown that the Fourteenth Amendment is implicated; plaintiff will be granted leave to amend.

      Moreover, Title II of the ADA prohibits a public entity from discriminating against a qualified individual with a disability on the basis of a disability. 42 U.S.C. § 12132 (1994); <u>Weinrich v. L.A. County Metro Transp. Auth.</u>, 114 F.3d 976, 978 (9th Cir. 1997). To state a claim under Title II, the plaintiff must allege four elements: 1) the plaintiff is an individual with a disability; 2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; 3) the plaintiff was either excluded from participation in or denied the benefits by the public entity; and 4) such exclusion, denial of benefits or discrimination was by reason of the plaintiff's disability. <u>Weinrich</u>, 114 F.3d at 978.

      With respect to his putative claims on behalf of 31 other in-patient inmates, plaintiff does not have standing to bring any claims for anyone other than himself. <u>Halet v. Wend Inv. Co.</u>, 672 F.2d 1305, 1308 (9th Cir. 1982) (party must assert [his] own rights not those of third parties), citing <u>Duke Power Co. v. Carolina Environmental Study Group</u>, 438 U.S. 59, 80, 98 S.Ct. 2620, 2634 (1978); <u>Warth v. Seldin</u>, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205 (1974). To the extent that plaintiff makes claims on behalf of third parties, they are dismissed.

      Regarding plaintiff's claims of being subjected to cruel and unusual punishment and discrimination and violations of due process and equal protection by being deprived of

access to the canteen or a microwave or free food or mailed food packages as an inmate in-patient, plaintiff's claims are simply not colorable.  Plaintiff is not constitutionally entitled to access to a canteen and a microwave or free food, even if such items have been arbitrarily removed.  "[T]he routine discomfort inherent in the prison setting is inadequate to satisfy the objective prong of an Eighth Amendment inquiry...." Johnson v. Lewis, supra, at 731.  Nor does the removal of a microwave or restriction from canteen items or free food state a due process or equal protection violation.  Access to such items may be construed as privileges, not rights, particularly in light of the fact that plaintiff states that his diet is being doctor-prescribed.  All claims related to these items will be dismissed, including allegations of "lies" on the part of some defendants as to the reasons for their removal.

As for allegations against certain of the defendants with respect to the processing of administrative appeals, prisoners do not have a "separate constitutional entitlement to a specific prison grievance procedure."  Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003), citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).  Even the non-existence of, or the failure of prison officials to properly implement, an administrative appeals process within the prison system does not raise constitutional concerns.  Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).  See also, Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993); Flick v. Alba, 932 F.2d 728 (8th Cir. 1991).  Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D.Ill. 1982) ("[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates.  Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment").  Specifically, a failure to process a grievance does not state a constitutional violation.  Buckley, supra.  State regulations give rise to a liberty interest protected by the Due Process Clause of the federal constitution only if those regulations pertain to "freedom from restraint" that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472,

484, 115 S. Ct. 2293, 2300 (1995).[1]  Plaintiff's due process claims against defendants with respect to his administrative appeals will be dismissed.

Plaintiff's conspiracy claims are not colorable.  Vague and conclusory allegations are not sufficient to support a claim for civil rights violations based on conspiracy.  Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982); see also Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992).  Moreover, plaintiff does not show an actual deprivation of his constitutional rights resulting from the alleged conspiracy.  Woodrum v. Woodward County, 866 F.2d 1121, 1126 (9th Cir. 1989)citing Singer v. Wadman, 595 F. Supp. 188 (D. Utah 1982) ("conspiracy allegation, even if established, does not give rise to liability under § 1983 unless there is an actual deprivation of civil rights").  Plaintiff's conspiracy claims will be dismissed.

Plaintiff may be seeking to set forth claims of retaliation, but he has failed to do so here.  Retaliation by prison officials for the exercise of a prisoner's constitutional right of access to the courts violates the federal constitution.  Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Schroeder v. McDonald, 55 F.3d 454, 461 (9th Cir. 1995); Black v. Lane, 22 F.3d 1395, 1402 (7th Cir. 1994); Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985).

In order to state a retaliation claim, a plaintiff must plead facts which suggest that retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor behind the defendant's conduct.  Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989); Rizzo 778 F.2d at 532.  The plaintiff must also plead facts which suggest an absence of

---

[1] "[W]e recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. See also Board of Pardons v. Allen, 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, see, e.g., Vitek v. Jones, 445 U.S. 480, 493, 100 S.Ct.1254, 1263-1264 (transfer to mental hospital), and Washington, 494 U.S. 210, 221- 222, 110 S.Ct. 1028, 1036-1037 (involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, supra.

legitimate correctional goals for the conduct he contends was retaliatory. Pratt at 806 (citing Rizzo at 532). Verbal harassment alone is insufficient to state a claim. See Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987). However, even threats of bodily injury are insufficient to state a claim, because a mere naked threat is not the equivalent of doing the act itself. See Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987). Mere conclusions of hypothetical retaliation will not suffice, a prisoner must "allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." Frazier v. Dubois, 922 F.2d 560, 562 (n.1) (10th Cir. 1990).

In Pratt, the Ninth Circuit concluded that in evaluating retaliation claims, courts should defer "to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt, 65 F.3d at 807 (citing Sandin v. Conner, 515 U.S. 472, 115 S. Ct. 2293 (1995)).

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). Also, the complaint must allege in specific terms how each named defendant is involved. There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Furthermore, vague and conclusory allegations of official participation in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's amended complaint complete. Local Rule 15-220 requires that an amended complaint be complete in itself without reference to any prior pleading. This is because, as a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files an amended complaint, the original

pleading no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's request for leave to proceed in forma pauperis is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $250.00 for this action. The fee shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

3. The complaint is dismissed for the reasons discussed above, with leave to file an amended complaint within thirty days from the date of service of this order. Failure to file an amended complaint will result in a recommendation that the action be dismissed.

DATED: 5/9/06

/s/ Gregory G. Hollows

_____
GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

ggh:009
batt0171.bnf